IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT C. HANSEN    CV 05-1791 ST

           Plaintiff,    FINDINGS AND
            RECOMMENDATION
   v.

JOANNE B. BARNHART,
Commissioner of Social Security,

           Defendant.

_____

STEWART, Magistrate Judge:

### INTRODUCTION

Plaintiff Robert Hansen brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits and Supplemental Security Income benefits. For the reasons set forth below, the decision of the Commissioner should be reversed and remanded for the award of benefits.

1 - FINDINGS AND RECOMMENDATION

**PROCEDURAL BACKGROUND**

Hansen initially filed an application for benefits on October 28, 2002, alleging disability since August 27, 2002, due to Post Traumatic Stress Disorder ("PTSD").  His application was denied initially and upon reconsideration.  On November 9, 2004, a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated April 6, 2005, the ALJ found that Hansen was not entitled to benefits.  On September 22, 2005, the Appeals Council denied Hansen's request for review, making the ALJ's decision the final decision of the Commissioner.  Hansen now seeks judicial review of the Commissioner's decision.  The Commissioner has filed a Motion for Remand (docket #15) for further administrative proceedings.  Hansen disagrees that further administrative proceedings are necessary and instead seeks an award of benefits.

**STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant

2  - FINDINGS AND RECOMMENDATION

evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, then the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two. 20 CFR §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has one or more severe impairments. If not, then the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to step three. 20 CFR §§ 404.1520(c), 416.920(c).

Disability cannot be based solely on a severe impairment. Therefore, at step three the Commissioner determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If the claimant's impairment does

not meet or equal one listed in the regulations, the Commissioner proceeds to step four. 20 CFR §§ 404.1520(d), 416.920(d).

At step four, the Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, then the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five. 20 CFR §§ 404.1520(e), 416.920(e).

At step five, the Commissioner determines whether the claimant is able to do any other work. If not, then the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, then the claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

If the claimant is found disabled and there is medical evidence of a substance disorder, then the ALJ must perform the sequential evaluation a second time to determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 CFR § 404.1535(a). It is a material factor when the claimant's remaining limitations would

not be disabling if the claimant stopped using drugs or alcohol. 20 CFR § 404.1535(b). A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42 USC § 423(d)(2)(C); *Bustamante v. Massanari,* 262 F3d 949, 955 (9th Cir 2001).

In materiality determinations the claimant bears the burden of proving that drug addiction or alcoholism ("DAA") is not a contributing factor material to the disability determination. *Ball v. Massanari,* 254 F3d 817, 821 (9th Cir 2001). However, if it is not possible to separate the limitations of DAA from the limitations of a mental disability, then DAA is not considered a material factor. *Clark v. Apfel,* 98 F Supp2d 1182, 1185 (D Or 2000) (citing the Social Security Administration's Emergency Teletype on DAA, August 30, 1996, Answer 29).

## ALJ's DECISION

At step one, the ALJ found Hansen had not engaged in substantial gainful activity since the alleged onset of his disability on August 27, 2002.

At step two, the ALJ found Hansen had the medically determinable severe impairments of a substance-induced organic disorder, a substance-induced depressive/anxiety disorder, and ongoing substance abuse.

At step three, the ALJ found that Hansen's impairments did not meet or medically equal the criteria of any listed impairment.

At step four, the ALJ found that when Hansen is using drugs and alcohol, he has marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence or pace.

The ALJ found that when Hansen is not using drugs or alcohol, he has mild restrictions in activities of daily living, mild to moderate difficulty in maintaining social functioning, and mild to moderate difficulty in maintaining concentration, persistence or pace.  The ALJ found that, when sober, Hansen retains the residual functional capacity to perform simple, routine, repetitive work, requiring no more than occasional public and co-worker interaction, occasional supervision, and no hazards.  The ALJ found that drug or alcohol abuse is material to Hansen's disability.

At step five, the ALJ found that Hansen, when sober, can perform the light level, unskilled work of a produce sorter, laundry worker, or laundry sorter.  Therefore, the ALJ found that Hansen not disabled.

## DISCUSSION

Hansen contends that the ALJ erred by: (1) failing to accord proper weight to the rating of disability by the Department of Veterans Affairs; (2) rejecting the opinion of a treating mental health counselor; (3) rejecting the opinion of an examining psychologist; (4) finding alcohol or drug addiction material to his disability; and (5) failing to consider the effect of stress on his mental impairments.  The Commissioner concedes that the ALJ committed the first and third errors.  In addition, the court finds that the ALJ erred in rejecting the opinion of the treating mental health counselor.  Because these errors are dispositive, the court need not address whether the ALJ committed the other alleged errors.

**I**.    **Department of Veterans Affairs Disability Rating**

The Department of Veterans Affairs ("VA") determined that Hansen was entitled to a service- connected disability rating of 70% due to PTSD effective August 28, 2001.  The rating

was increased to 100% effective August 28, 2002, "because you are unable to work due to. . .service connected disability." Tr. 144.[1]  The ALJ's only comment about the VA disability rating was that Hansen "has a history of posttraumatic stress disorder (PTSD), for which he has been granted 70 percent service-connected compensation by the Veterans Administration."  Tr. 13.

The ALJ is required to give "great weight" to the VA determination of disability. *McCarthy v. Massanari,* 298 F3d 1072, 1076 (9th Cir 2002).  The ALJ may give less weight to the VA decision "if he gives persuasive, specific, valid reasons for doing so that are supported by the record.  *Id.*  The parties agree that the ALJ failed to give great weight to the VA determination and did so without providing adequate reasons supported by the record.

## II.    Opinion of the Treating Mental Health Counselor

Katheryn Henninger is a Psychiatric Mental Health Nurse Practitioner on the VA's Post Traumatic Stress Disorder Clinical Team.  Although a nurse practitioner is not an "acceptable medical source," she is an "other source" to be considered under the regulations.  20 CFR § 404.1513(a)(3).  At a minimum, the ALJ must treat a nurse practitioner's opinion with as much consideration as a lay witness and give reasons supported by substantial evidence for rejecting it. *Vincent on behalf of Vincent v. Heckler*, 739 F2d 1393, 1395 (9th Cir 1984).

Nurse Henninger began treating Hansen on September 23, 2002.  On October 26, 2004, she asserted that Hansen's diagnosis was PTSD, alcohol abuse, nicotine dependence, and

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

7 - FINDINGS AND RECOMMENDATION

polysubstance abuse in remission, with a Global Assessment Functioning ("GAF")[2] score of 50.

Tr. 363. She opined that Hansen:

> would be unable to hold a job either full or part time regardless of alcohol use (though it certainly worsens his mental condition.) His concentration is fragmented by intrusive thoughts of war and memory problems. He is easily frustrated and would not do well following a structured work schedule as there are nights he is unable to sleep due to nightmares and sleep agitation typical of PTSD. He copes with a high level of anxiety when not using alcohol that further limits concentration and memory. He has difficulties with problem-solving. A recent example of this is that he ran out of medication for PTSD. He was unable to manage the phone refill system at the hospital and will likely need prompts from his wife to call in medication refills in a timely manner to avoid lapses in treatment. He coped with the problem of not having his medications by drinking and didn't think about calling to get further assistance from me in this matter. He has markedly elevated anxiety when going to public places and would have a hard time tolerating authority in a work environment. He is easily startled which triggers an anger response, and it's unlikely that a work environment could control for that problem. I don't believe Mr. Hansen stopped working because he wanted to, but rather stopped because he was no longer able to manage employment.

Tr. 363-64.

In an undated letter apparently faxed to Hansen's counsel on December 3, 2004, Nurse Henninger added:

> Mr. Hansen has maintained sobriety and has been free from marijuana use since my last appointment with him 26 October 2004. During this month his PTSD symptoms have been prevalent. He has nightmares which interfere with restful sleep, sleep agitation where he exhibits motor restlessness, and does not feel rested upon awakening. He has had one major flashback which included auditory, olfactory, and visual stimuli on the day of his Social Security exam. He feels the stress of that day induced the flashback, which is possible. He is edgy during the day, and

---

[2] A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.* few friends, unable to keep a job). The American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. 2000).

8 - FINDINGS AND RECOMMENDATION

> is overly-sensitive to sounds due to the level of hypervigilance associated with his PTSD. He isolates at home for the most part, finding contact with other people very difficult. He has serious problems with authority that would pose problems in a work environment. His short term memory is poor due to intrusive thoughts about Vietnam and this causes problems in task execution. His anger is explosive and he finds it takes a lot of effort to contain his behavior whether he is drinking or not. He is easily frustrated and when he feels trapped is likely to lash out verbally or physically. He struggles with thoughts of harming others and is greatly bothered by that thinking.
>
> He has been in and out of treatment with the VA since the mid-70's for substance abuse, and while in treatment has had at least 3 episodes of long-term remission of substance use up to a year at a time. When he doesn't drink, his PTSD symptoms worsen because an escape and form of emotional numbing has been removed, so he is more likely to be affected by the symptoms. When he did work, he worked 14-15 hours a day, seven days a week and would give up vacation time to work. When he wasn't working he was drinking and using marijuana. Both of these behaviors are a way he has contained his PTSD symptoms, as they are powerful distractors. He is no longer able to function in this manner.
>
> Mr. Hansen has been forthright with me in letting me know if he is drinking or using marijuana, so I have no reason to believe he has been disingenuous. This is an issue we will continue to work with him on.
>
> I feel on the basis of his PTSD alone he is unable to maintain employment due to the severity of his symptoms. As I stated in my first letter, I don't believe he isn't working because he doesn't want to-or can't due to substance abuse-but feel he isn't working because he can no longer do so.

Tr. 367.

The ALJ declined to give any weight to Nurse Henninger's October 2004 opinion, explaining that she:

> overlooks that the claimant did consistently well while on medication during the period of September 2002 through June 2003, when he maintained his sobriety, as he was complying with his alcohol dependence treatment and medication management. Ms. Henninger's statements appear to be related to the period after the claimant's relapse in September 2003, through the present, when he has not consistently maintained sobriety, and has been uncooperative and non-compliant. She also

9 - FINDINGS AND RECOMMENDATION

>       overlooks that the claimant has gone to public places such as the gym and
>       the pool, and has successfully attended group meetings. Then, Ms.
>       Henninger proceeded to refer to the claimant's hospitalization in August
>       2004, which she recognized was exacerbated by the claimant's alcohol
>       use. This suggests that she is focusing on the two documented instances
>       where the claimant has had decompensation as a result of his alcohol use,
>       but she did not consider that the claimant has done well without alcohol
>       use for a period of about a year. Therefore, I am not giving any weight to
>       Ms. Henninger's opinions, as she is obviously not addressing the entire
>       period under consideration.

Tr. 18.

In sum, the ALJ rejected Nurse Henninger's opinion because she failed to recognize that Hansen did well while maintaining his sobriety between September 2002 and June 2003 and instead focused on time periods when he drank alcohol and decompensated. That rationale is not supported by the record. Although Hansen became sober by September 17, 2002, the treatment records indicate that by September 30, 2002, he had increasing PTSD symptoms "including extremely disturbed sleep, nightmares with combat content and talking while thrashing about in his sleep." Tr. 216. His wife was so concerned about him that she felt compelled to quit her job so that she could be at home with him. *Id*.

Hansen commenced intensive outpatient treatment with the VA on October 7, 2002. At an October 28, 2002, meeting, Hansen became uncomfortable with the number of people in the room when there were 10 patients and three staff. Tr. 211. On November 14, 2002, Hansen reported no crying spells, but an increase in PTSD symptoms with nightmares, night sweats, motor agitation in sleep, and intrusive thoughts about traumas of war. Tr. 205. He was irritable and had some suicidal ideation, decreasing in frequency and intensity, and some anxiety attacks, also decreasing in intensity. *Id*.

On December 16, 2002, Hansen reported that since starting treatment, his depressive symptoms were about 50% better and his PTSD symptoms were about 20% better. Tr. 192. He exhibited reduced motor activity and productivity, with a restricted affect and tense mood, and was irritable. *Id*. His medication was increased. Tr. 193.

On January 13, 2003, Hansen reported sleeping better, but continued to have night agitation and recurring combat nightmares. Tr. 187. Nurse Henninger noted that this was the first time Hansen was able to describe his nightmare without crying. *Id*. His mood was "more stable," though he still became frustrated. *Id.*

On February 10, 2003, Hansen refused to obtain documentation of attendance at a meeting because it "constitutes unnecessary control." Tr. 186. On March 14, 2003, Hansen reported that he was giving up one group meeting because "traffic to group creates anger response not conducive to therapy for him or group." Tr. 183. His mood was improved "under low stress conditions." *Id*. His angry outbursts were less frequent at home, though he avoided driving at high traffic times in order to avoid becoming angry. *Id*. He isolated himself at home unless going out for treatment. *Id*. The pending war in Iraq was triggering intrusive thoughts about war, anxiety and agitation.

On June 5, 2003, Hansen reported that he was being evicted and was "extremely stressed." Tr. 180. He questioned whether his anti-anxiety medication was working and was prescribed a new medication. *Id*.

Thus, during the time period of sobriety and compliance with treatment from September 2002 through June 2003, Hansen exhibited severe PTSD symptoms. Accordingly, the reason offered by the ALJ to reject Nurse Henninger's opinion is not supported by substantial evidence.

### III.     Opinion of the Examining Psychologist

Gary P. Monkarsh, Ph.D., a VA Psychologist, examined Hansen on July 1, 2003, and also reviewed his medical and counseling records. Tr. 189-90. Hansen reported that he thought about his Vietnam experiences several times a day and dreamt about them nightly. Tr. 189. He also reported chronic problems with sleep disturbance, hypervigilance, exaggerated startle response, and anger management. *Id*. He had physically assaulted two teenagers in his apartment complex on separate occasions and tried to stay inside his apartment for fear of getting into more fights. *Id*. He avoided reminders of Vietnam, had great difficulty being affectionate to others, and had lost interest in previously pleasurable activities such as hiking. *Id*.

Dr. Monkarsh noted that Hansen's medical history included a June 23, 2003, diagnosis by Linda Lucas, M.D., of PTSD with severe depressive symptoms, possible mood related substance abuse disorder, and trapezius muscle strain. *Id*. A June 25, 2003, discharge note by Thomas Walsh, Ph.D., indicated that Hansen suffered from PTSD, depressive order NOS, economic problems with unemployment, and nicotine dependence. *Id*. Finally, Dr. Monkarsh reported that a mental health note by Nurse Henninger on March 23, 2003, indicated chronic severe PTSD. *Id*. Hansen reported that he had attempted suicide in 1969, had been in extensive alcohol treatment programs, and had been clean and sober since September 2002. *Id*.

Hansen described to Dr. Monkarsh the traumatic experiences he had endured in two years of combat duty in Vietnam. Tr. 190. On his return from Vietnam Hansen reported had great difficulty getting along with people. *Id*. He said: "I couldn't get along with anyone, and I couldn't trust anyone, and I still can't. No one goes to our house ever because they never know

when I'm going to blow up. My relationship with my wife has been rocky. I have a lot of anger and yell at her, and I've also hit her, but not recently." *Id*. Dr. Monkarsh also noted:

> The veteran admits that he has no close friends. When asked about this work history, the veteran said that it has been difficult for him to have stable employment because he said, "I hate everybody, myself included." In a further description of his symptoms, the veteran states that he suffers from chronic symptoms of depression which include suicidal ideation without a specific plan as recently as last night, low energy levels, low motivation, low self-esteem, feelings of worthlessness and hopelessness. When asked why he feels this way, Mr. Hansen said, "because I haven't done enough in my life, and I don't see a future for myself." [h]e admits that he has no hobbies and does nothing for fun. He also admits that he has had frequent problems with the law over the years. He estimates that he has been arrested on two dozen occasions for fighting, and adds that he has been briefly incarcerated on at least a dozen occasions for assault charges.

*Id.*

Dr. Monkarsh concluded that Hansen "appears to meet the DSM IV criteria for chronic and severe post traumatic stress disorder." Tr. 191. In addition, Dr. Monkarsh diagnosed major depressive disorder secondary to PTSD, and alcohol dependence in early remission. *Id*. He also stated that Hansen "was exposed to a number of life threatening events in Vietnam," to which he responded with "feelings of helplessness and horror. He persistently re-experiences these events, he persistently avoids stimuli associated with these events, and [he] has a numbing of general responsiveness, and he suffers from persistent symptoms of increased arousal." *Id*. Dr. Monkarsh concluded that Hansen "suffers from severe overall social, industrial, and emotional impairment" and assessed a GAF score of 41-45. *Id.*

///

///

13 - FINDINGS AND RECOMMENDATION

The ALJ noted many of Dr. Monkarsh's findings and GAF score, but found that the "GAF is obviously given considering the history of alcohol abuse.  However, at the time of the evaluation, the claimant has been clean and sober since September 2002.  I am not giving any weight to this GAF, as it is inconsistent with Dr. Monkarsh's findings on mental status examination, which had been noted hereinbefore." Tr. 14-15.  The ALJ was apparently referring to Dr. Monkarsh's determination "on mental status examination that the claimant was oriented times four." Tr. 14.  However, in Dr. Monkarsh's opinion, Hansen continued to have severe limitations arising from PTSD and depression while sober, which is consistent with the opinion of Nurse Henninger.

To reject Dr. Monkarsh's opinion, the ALJ also relied on the contrary opinion of Larry Hart, Ph D, a reviewing psychologist, who concluded that, without DAA, Hansen would have mild limitations in activities of daily living, mild to moderate limitations in social functioning, mild to moderate limitations in maintaining persistence and pace, and no periods of decompensation.  Tr. 422.

An ALJ may reject the uncontradicted opinion of an examining psychologist only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester v. Chater,* 81 F3d 821, 830 (9th Cir 1995).  The opinion of an examining psychologist, even if contradicted by another psychologist, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Id,* citing *Andrews v. Shalala,* 53 F3d 1035, 1043 (9th Cir 1995).  The Commissioner concedes that the ALJ erred by failing to address Dr. Monkarsh's opinion appropriately.

///

**IV.     Remand For Payment of Benefits**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel,* 211 F3d 1172, 1178 (9th Cir), *cert denied,* 531 US 1038 (2000); *Benecke v. Barnhart*, 379 F3d 587 (9th Cir 2004).  The court's decision turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed."  *Harman*, 211 F3d at 1178.  The court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*

The ALJ failed  properly to assess Hansen's 100% VA disability rating. The ALJ also improperly rejected the testimony of Dr. Monkarsh and Nurse Henninger as to Hansen's mental and physical limitations.

The Commissioner argues that it remains unclear what bearing the opinions of Dr. Monkarsh and Nurse Henninger have on the determination of Hansen's RFC.  In addition, the Commissioner argues that the materiality of DAA is at issue, and that Hansen may be disabled

under the VA regulations but not entitled to Social Security benefits due to the materiality of alcoholism.

Given that Hansen clearly established that he can no longer perform his past relevant work (Tr. 25), this case turns on whether the Commissioner has met her burden at step five of proving that Hansen retains the ability to perform other work in the national economy, eight hours a day, five days a week.

The VE testified that a person with a marked limitation in concentration, persistence or pace for a third of the workday would be unable to sustain employment. Tr. 434. The VE stated that a person who gets angry at co-workers or supervisors would not be able to maintain employment. Tr. 435. Dr. Monkarsh found "severe overall social, industrial, and emotional impairment," and assessed a GAF score of 41-45, indicating an inability to keep a job. If credited, Dr. Monkarsh's opinion, coupled with the testimony of the VE, establishes that Hansen cannot work on a regular and sustained full-time basis and compels a finding of disability. In addition, this is consistent with Nurse Henninger's assessment. If credited, Nurse Henninger's opinion also compels a finding of disability. Also if given great weight, the VA's finding of 100% disability is consistent with an inability to work.

In sum, the ALJ improperly rejected evidence that, if credited as true, establishes Hansen's entitlement to benefits. The Commissioner has not identified any evidence or outstanding issue that, if resolved, might provide a sufficient basis for rejecting that evidence. Because this court finds no reason to reject or more fully develop this evidence, it should be credited as true which compels a finding of disability. Therefore, this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F3d 968 (9th Cir 2000);

*Reddick v. Chater*, 157 F3d 715, 729 (9th Cir 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

## RECOMMENDATION

For the reasons set forth above, the Commissioner's motion for remand (docket #15) should be DENIED.  The Commissioner's decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for the calculation and award of benefits.

## SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due **January 10, 2007**. If no objections are filed, then the Findings and Recommendations will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district judge and go under advisement.

Dated this 20th day of December, 2006.

/s/ Janice M. Stewart_____
JANICE M. STEWART
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION